UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD E. MUDICA III,

    Plaintiff,

    v.       CAUSE NO. 3:20-CV-593-JD-MGG

JUSTIN MOODY, et al.,

    Defendants.

OPINION AND ORDER

Donald E. Mudica III, a prisoner without a lawyer, filed an amended complaint against three employees of St. Joseph County Community Corrections (SJCCC).[1] "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review

---

[1] According to the St. Joseph County website, "[i]n 1981 Indiana initiated a Community Corrections program whose purpose is to assist the Indiana Department of Correction in fulfilling its mission by establishing and operating local corrections and criminal justice programs that protect the public safety while providing effective alternatives to imprisonment at the state level. Access governing statutes I.C. 11-12-1. Each year in St. Joseph County nearly 900 adult and 400 juvenile offenders serve sentences through local corrections programs, and the vast majority of convicted offenders will serve at least a portion of their sentence under some kind of community supervision. Community Corrections in St. Joseph County employs a wide variety of programs that ensure public safety through the use of placements that are tailored to the individual needs of offenders." *See* https://www.sjcindiana.com/149/Community-Corrections (last visited March 10, 2022). The Indiana Code defines a "community corrections program" as a "community based program that provides preventative services, services to offenders, . . . [and] services to persons sentenced to imprisonment, . . . and is operated under a community corrections plan of a county and funded at least in part by the state subsidy provided in IC 11-12-2." Ind. Code § 11-12-1.

the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

Mudica was confined at the South Bend Re-entry Facility when he filed this amended complaint. However, he complains of events that happened at SJCCC[2] between March 21, 2018, and January 3, 2019. According to Mudica, SJCCC has documentation of his hearing disability on file from previous stays. Due to his bilateral profound sensorineural hearing loss, Mudica cannot hear intercoms or use the push to talk devices that are required to communicate with staff. When he arrived at SJCCC on March 21, 2018, he was not seen by a case manager to discuss those hearing issues and address reasonable accommodations. Instead, he was placed in a regular unit where he was unable to participate in activities, hear announcements, set doctor appointments, or communicate with his family. Mudica began writing to Michael Wells, his prior case

---

[2] Mudica lists the address of the SJCCC program he was housed in as 4161 Lathrop St. South Bend, IN 46628. *See* ECF 15 at 2. The St. Joseph County official website describes this location as the "St. Joseph County Community Corrections – DuComb Center" which was "one of the first work release facilities in the state of Indiana. It is a community-based residential facility located near the South Bend Airport. Funded through the Indiana Department of Corrections (sic) and user fees, DuComb Center is administered by the Community Corrections Advisory Board. It serves as an alternative to incarceration, and provides programming in job readiness, substance abuse and cognitive skills." *See* http://www.stjosephcountyindiana.com/departments/SJC_correction/ducomb_center/ (last visited March 10, 2022).

2

manager, for help, but Wells failed to respond. Instead, he told another employee, "Mr. Mudica has been here six times he knows how this works." ECF 15 at 2.

On March 22, 2018, Mudica asked Tomilla Hopkins, the officer in charge, for assistance. She accused him of faking his disability, refused him any help, and warned him that he would face consequences if he missed any announcements. Because he was unable to hear them, he was denied medication more than thirty times, and he was disciplined. He was also removed from the second phase of an outpatient therapy program and was not able to accrue points for participation.

Shortly after his arrival, Mudica was transported to an outside hospital where he was diagnosed with impetigo and was referred to an oncologist. He was informed that he was not eligible for Medicaid while incarcerated, so the SJCCC purchased the medication for his contagious condition but refused to fill medications for his other conditions or arrange for a visit to the oncologist. When he complained to Case Manager Wells, he was told to apply for insurance through Indiana's Family and Social Services Administration (FSSA) even though Case Manager Wells knew Mudica had already been denied. He alleges he was "left to suffer in pain for months without prescriptions and access to medical treatment ordered by doctors." *Id.* at 3. In August of 2018, when he did finally obtain insurance, no one at SJCCC would help him set up doctor appointments which made it difficult because there are no TTY machines at SJCCC.

Between April 5, 2018, and December 26, 2018, Mudica filed several grievances regarding the fact that he needed accommodations for his hearing disability. Officer

3

Hopkins received his grievances, but Mudica never received a response. Instead, he was written up for multiple violations which Mudica describes as frivolous. On December 26, 2018, Justin Moody, the program manager at SJCCC, "used the conduct reports to remove the minimal points [he] had to violate my placement." *Id*. at 3. Mudica believes Program Manager Moody wanted him out of the facility "because [he] was disabled." *Id*. He told Mudica to plead guilty to the reports in court, and he would recommend home detention. However, the judge "refused to allow a step down into home detention," and the "scheme backfired landing [him] back in IDOC for an additional three years." *Id*.

Mudica has sued Program Manager Moody, Case Manager Wells, and Officer Hopkins for compensatory damages. He also asks the court to "order SJCCC to abide by the policies that ensure the disabled accommodations mandated by the Americans with Disabilities Act." *Id*. at 4.

Title II of the Americans with Disabilities Act (ADA) provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132. Prisons and correctional facilities are public entities within the purview of Title II. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Officials can be sued under the ADA for declaratory and injunctive relief. *Radaszweski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004). Where an inmate seeks monetary damages, the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act, 29 U.S.C. § 701, given the uncertainty about the availability of

4

damages under Title II and because the relief available is "coextensive." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). Under the Rehabilitation Act, damages are available against a state that accepts federal assistance for prison operations, as all states do. *Id.* To state a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity or otherwise discriminated against him because of his disability.[3] *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672 (citation omitted). Additionally, a plaintiff can establish intentional discrimination through a showing of deliberate indifference. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). In other words, discrimination occurs when the defendant knows that a violation of these rights is "substantially likely" yet fails to act. *Id.* (citation omitted). A claim under either the ADA or Rehabilitation Act cannot be brought against individual employees but may be brought against the department head of the facility in his or her official capacity. *Jaros*, 684 F.3d at 670 & n.2.

Here, Mudica alleges his bilateral profound sensorineural hearing loss substantially limits his ability to hear and that this impairment was documented with

---

[3] "[W]ith respect to this lawsuit, the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros*, 684 F.3d at 670; *see also Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (noting that the standards under the ADA and the Rehabilitation Act are the same except that under the Rehabilitation Act "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action" while the ADA "requires only that [it] be *a* reason for the challenged action") (emphasis in original).

SJCCC. Accordingly, he has plausibly alleged he is a qualified person with a disability.[4] Additionally, Mudica alleges he was unable to use the intercoms or push to talk devices that were necessary to communicate with staff, so he was unable to participate in various facility programs, services, and activities (including meals, medical appointments, an outpatient therapy program, disciplinary hearings, and telephone calls) because of his disability. *See Jaros*, 684 F.3d at 672 (noting that meals made available to inmates are considered a "program or activity); *see also Hanson v. Sangamon Cty. Sheriff's Dep't*, 991 F.Supp. 1059, 1062–63 (7th Cir. 1998) (finding deaf inmate stated a claim under the ADA and Rehabilitation Act because the jail failed to ensure he had access to effective means of communication, including auxiliary aids, TDD's or qualified interpreters, which qualified as a services and/or activities). Giving Mudica the benefit of the inferences to which he is entitled at this stage, he will be allowed to proceed past the pleading stage on a Rehabilitation Act claim against Program Manager Moody in his official capacity for monetary damages and injunctive relief.[5] Moreover, because the scope of the ADA is slightly more broad than the Rehabilitation Act, *see supra* note 3, he will be allowed to proceed against Program Manager Moody in his official capacity for injunctive relief under the ADA as well.[6]

---

[4] For purposes of this order, the court will also assume both that SJCCC meets the statutory definition of a "public entity" and that it receives federal funding though the distribution of Indiana Department of Correction allocations. *See supra* notes 1, 2, & 3.

[5] Although the Eleventh Amendment generally bars suits for money damages against a state or state agency, the Seventh Circuit has held that states waived their Eleventh Amendment immunity under the Rehabilitation Act by accepting federal funds. *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000).

[6] That said, any Rehabilitation Act or ADA claims against Case Manager Wells and Officer Hopkins will be dismissed because, as noted above, such claims cannot be brought against individual

Mudica also alleges the defendants retaliated against him. To establish a First Amendment retaliation claim, he must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted).

Mudica states he filed multiple grievances regarding the fact he needed accommodations for his hearing disability. Filing a prison grievance is a protected activity for purposes of a First Amendment retaliation claim. *Id.* He alleges Officer Hopkins received his grievances, deliberately ignored them, and instead he was written up for frivolous violations shortly thereafter. He also alleges Program Manager Moody then used those unjustified write-ups as a pretext to remove program points he had accrued and to violate his placement at SJCCC because he wanted Mudica transferred out of the facility. Receiving allegedly false write-ups, the subsequent removal of points, and a transfer to a less desirable facility could deter a person of ordinary firmness from continuing to engage in protected activity. *See Beatty v. Henshaw*, 826 Fed.Appx. 561, 563–64 (7th Cir. 2020) (even threats of "manufacture[d] disciplinary charges" or a transfer to a facility that would present a "serious change[] of circumstance" could deter an inmate from complaining); *see also Howard v. Koeller*, 756 Fed.Appx. 601, 605 (7th Cir. 2018) (finding false statements in a conduct report could deter a person of ordinary

---

employees and must instead be brought against the department head of the facility in his official capacity. *Jaros*, 684 F.3d at 670 & n.2.

7

firmness from engaging in protected speech). Giving Mudica the benefit of the inferences to which he is entitled at this stage, it is plausible the grievances filed were at least a motivating factor in the actions taken against him. Thus, Mudica may proceed on a First Amendment retaliation claim for monetary damages against Program Manager Moody and Officer Hopkins in their individual capacities.

Finally, Mudica's complaint can be read to allege he believes the defendants were deliberately indifferent to his medical needs. To establish liability for claims of inadequate medical care, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Mudica alleges that, shortly after his arrival at SJCCC on March 21, 2018, he was diagnosed with impetigo and was referred to an oncologist. However, he claims he suffered in pain without his prescriptions and without access to medical treatment for several months even though he complained to Case Manager Wells in writing of his situation. Construing Mudica's allegations generously, it can plausibly be inferred that his referral to the oncologist—coupled with severe pain—was an objectively serious

8

medical need to which Case Manager Wells was deliberately indifferent because he knew Mudica was receiving no medical care at all. As such, Mudica may proceed on an Eighth Amendment deliberate indifference claim for monetary damages against Case Manager Wells.

For these reasons, the court:

(1) GRANTS Donald E. Mudica III leave to proceed against Justin Moody, Program Manager at St. Joseph County Community Corrections, in his official capacity for monetary damages on a claim for violating his rights under the Rehabilitation Act from March 21, 2018, to January 3, 2019, with regard to his bilateral profound sensorineural hearing loss;

(2) GRANTS Donald E. Mudica III leave to proceed against Justin Moody, Program Manager at St. Joseph County Community Corrections, in his official capacity for injunctive relief to ensure accommodations are provided at St. Joseph County Community Corrections for program participants with profound hearing loss in accordance with the Rehabilitation Act and Title II of the Americans with Disabilities Act;

(3) GRANTS Donald E. Mudica III leave to proceed against Justin Moody, Program Manager at St. Joseph County Community Corrections, and Tomilla Hopkins, Officer in Charge at St. Joseph County Community Corrections, in their individual capacities for monetary damages for retaliating against him in violation of the First Amendment for filing grievances from April 5, 2018, to December 26, 2018, about the

lack of accommodations at St. Joseph County Community Corrections related to his bilateral profound sensorineural hearing loss;

(4) GRANTS Donald E. Mudica III leave to proceed against Michael Wells, Case Manager at St. Joseph County Community Corrections, in his individual capacity for monetary damages pursuant to the Eighth Amendment for being deliberately indifferent to his serious medical needs—including the need to see an oncologist, the lack of prescription medication, and severe pain—from March 21, 2018, to January 3, 2019;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Justin Moody, Program Manager at St. Joseph County Community Corrections, Tomilla Hopkins, Officer in Charge at St. Joseph County Community Corrections, and Michael Wells, Case Manager at St. Joseph County Community Corrections, at St. Joseph County Community Corrections, with a copy of this order and the amended complaint (ECF 15);

(7) ORDERS St. Joseph County Community Corrections to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Justin Moody, Program Manager at St. Joseph County Community Corrections, Tomilla Hopkins, Officer in Charge at St. Joseph County Community Corrections, and Michael Wells, Case Manager at St. Joseph

County Community Corrections, to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

    SO ORDERED on March 11, 2022

                                                       /s/JON E. DEGUILIO
                                                       CHIEF JUDGE
                                                       UNITED STATES DISTRICT COURT